**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS REMELIUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01105-AGF |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Thomas Remelius was not

disabled, and thus not entitled to disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-434, or supplemental security income ("SSI") under Title

XVI of the Act, 42 U.S.C. §§ 1381-1383f.   For the reasons set forth below, the decision

of the Commissioner will be reversed and the case remanded for further development of

the record.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of

Uncontroverted Facts (ECF No. 11-1), to the extent they are admitted by the

---

[1]     After this case was filed, a new Commissioner of Social Security was confirmed.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is
substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

Commissioner (ECF No. 18-1), and the Commissioner's Statement of Additional Facts (ECF No. 18-2), which Plaintiff has not refuted.   Together, these statements provide a fair description of the record before the Court.   Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on July 17, 1961, filed his applications for benefits on January 6, 2015.   He alleged disability beginning January 18, 2014, when he was 52 years old, due to chronic back pain, arthritis, and difficulty sleeping.   On June 2, 2015, Plaintiff's applications were denied at the administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").

**Evidentiary Hearing**

A hearing was held on March 29, 2017, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.   Plaintiff testified that the highest grade he had completed in school was eighth grade.   He testified that he had been employed as an over-the-road truck delivery driver, and previously as a tractor trailer driver, tow truck driver, and construction laborer, but that he stopped working as of his disability onset date, due to injuries suffered to his back after he fell on ice.

At the hearing, the ALJ asked the VE about Plaintiff's past relevant work as a tow truck driver and tractor trailer truck driver.   The VE testified that the tow truck driver position was classified in the Dictionary of Occupational Titles ("DOT")[2] as a medium,

---

[2]    As the Eighth Circuit has explained:

semiskilled job, with a [Specific Vocational Preparation ("SVP")] of 3; and the tractor

trailer truck driver position was classified as a medium, semiskilled job with an SVP of 4.

Tr. 55-56.

The ALJ then engaged the VE in the following line of questioning with respect to

Plaintiff's past work:

> Q    Given the claimant's age, education and past work, does the claimant possess any work skills provided at the sedentary exertional level that are transferrable?
>
> A    Driving skills.   Driving skills are only transferrable to other driving jobs.
>
> Q    Okay.
>
> A    At the light level, not the sedentary level.
>
> Q    At the light level?
>
> A    Yes.   Not at the sedentary.   There are only two jobs that are sedentary that are driving.   And, well, there are three, but one's an SVP 7 and that would be the only one that would be skilled and he would not be able to transfer his skills to that particular job.   At the sedentary level.
>
> Q    Okay.   So none at the sedentary level.

The DOT is the Commissioner's primary source of reliable job information. The Commissioner uses the DOT to classify occupations as skilled, semiskilled or unskilled.   In the DOT, each job is assigned a number that reflects the job's specific vocational preparation time (SVP), i.e., how long it generally takes to learn the job.   An SVP level of "three" indicates that a job requires more than one month and up to three months of training; while an SVP level of "four" would require more than three months and up to six months of training.   Unskilled work, on the other hand, requires less than thirty days training.   Unskilled work corresponds to an SVP of one or two in the DOT.

*Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998) (internal citations omitted).

A       No, sir.

Tr. 56.

Next, the ALJ asked the VE questions regarding a hypothetical person with Plaintiff's vocational factors (age, education, work experience as described by the VE), who was limited as follows:

> This individual can lift up to 25 pounds occasionally, lift/carry up to 10 pounds frequently. This individual can stand and walk for about six hours and sit for up to six hours in an eight hour work day with normal breaks. This individual can occasionally climb ramps or stairs. This individual can never climb ladders, ropes or scaffolds. This individual can occasionally balance, stoop, kneel[,] crouch, but never crawl. This individual should avoid unprotected heights and exposure to hazardous machinery.

Tr. 57.

In response to the ALJ's questions, the VE testified that such a hypothetical person could not perform Plaintiff's past work. Tr. 57. But when asked whether the individual could perform other work in the national economy, the VE responded affirmatively, citing the jobs of (1) an escort vehicle driver, which the VE stated was classified as a light, unskilled job, with an SVP of 2; (2) a chauffeur, which the VE stated was classified as a light job, with an SVP of 3; and (3) the light, unskilled, non-driving jobs of order caller and mail sorter, both with an SVP of 2. Tr. 57-58.

Plaintiff's attorney then questioned the VE as to Plaintiff's transferrable skills, as follows:

> Q       What is the differentiating factor between the unskilled type of driving jobs and something like the semiskilled driving jobs?
>
> A       I really don't know except that it takes longer learn those jobs. That's

4

why the SVP level is higher.

* * *

Q    I'm wondering is there anything else in the light jobs that would require skills beyond just the driving skills?   I mean just for instance, and I'm using this as an example, the chauffer job.

A    It could be customer service skills.

Q    That was my guess on that as well.

Tr. 60-61.   After some further questioning by the attorney as to the transferability of

driving skills, the VE testified as follows:

A    [T]here are many jobs at SVP levels of 4 and 3 that I could cite, at the semiskilled level, where he[3] would have skills to transfer to at those levels.

Q    Would those jobs require additional skills though?

A    No.   One would be like a Mobile Lounge Driver, somebody that takes passengers from the hotel to the airport.

Q    Okay.

A    That would be an SVP level 3.

Q    Okay.

A    And when he was a [Tow] Truck Driver he would have learned some customer service skills, with customers.   You know.   Some of these people are fairly angry when their car breaks down.   So he would have learned that. I don't know that there would have been, you know, when he was a Tractor Trailer Truck Driver he probably had to do bills of lading and fill out logbooks and stuff like that.

Q    That's true.

A    So it's not a matter of clerical.   So I don't know what other skills he

---

[3]    Viewing the testimony in context, it appears that the VE was referring to Plaintiff here.

would have. The clerical and the customer service.

Q       Okay. Okay. Those would be additional skills beyond the driving skills that he acquired, is that what you're saying?

A       Right. But all I'm saying was the driving, I said driving is only transferable to other driving jobs.

Tr. 64-65. The ALJ did not ask the VE any follow-up questions in response to the attorney's line of questioning.

**ALJ's Decision**

By decision dated July 6, 2017, the ALJ found that (1) for the purpose of Plaintiff's disability insurance benefits claim, Plaintiff met the insured status requirements of the Social Security Act from January 1, 2009 through March 31, 2019; (2) Plaintiff had not engaged in substantial gainful activity since January 18, 2014, the alleged onset date; (3) Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and obesity; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; and (5) Plaintiff had the residual functional capacity ("RFC") described in the above hypothetical question posed to the VE.

In formulating this RFC, the ALJ considered the opinion of consulting internist, Raymond Leung, M.D., who examined Plaintiff on May 9, 2015. The ALJ found that Dr. Leung's examination results did not support the level of symptom severity to which Plaintiff testified during the evidentiary hearing, such as not being able to lift more than 10 pounds and not being able to sit for more than 15 minutes or stand for more than 10

6

minutes.   Specifically, the ALJ stated that, as of the examination date, Plaintiff had

alleged disability for nearly a month and a half.   "If that were the case," the ALJ stated,

"one would expect to see some strength loss particularly in the claimant's upper

extremities.   Instead, Dr. Leung observed that the claimant's upper extremity strength

was full at 5/5."   Tr. 23.   The ALJ conceded that Dr. Leung found Plaintiff to have

"slight" limitations to his lower extremities, "as his strength was 4/5," and that Plaintiff

was observed to have difficulty getting up from his chair and the examination table.   Tr.

23.   Moreover, Plaintiff used a cane during the examination.   However, the cane was

not medically prescribed, and, as the ALJ noted, Dr. Leung found that Plaintiff could lift

up to 25 pounds.[4]   The ALJ gave Dr. Leung's opinion great weight and noted that it was

consistent with Plaintiff's treatment records.

The ALJ also discussed Plaintiff's treatment records in detail and then

summarized them as follows:

> The adjectives preceding the claimant's documentation of his impairments is
> no more than mild in this case.   His treatment records note that in addition
> to some medication non-compliance, the claimant has not required physical
> therapy, injections or surgery.   Although the claimant was encouraged to
> seek pain management options, his records do not detail that he has explored
> such options.   The claimant's records indicate some impairments and
> limitations.   However, nothing from the medical records indicates that the
> claimant's combination of these impairments is severe enough to preclude
> the claimant from performing all work available in the national economy.

---

[4]      Dr. Leung also found that Plaintiff could walk 50 feet unassisted; Plaintiff was
able to tandem walk, hop, heel walk, toe walk, and squat one-fourth of the way down;
Plaintiff had no muscle atrophy or spasms; Plaintiff walked with a mild limp and had
decreased range of motion in the lumbar spine; and Plaintiff's his straight leg raising was
limited to 30 degrees with the left leg and 10 degrees with the right.   Tr. 261.

> Additionally, the undersigned considered pain as an additional, non-exertional limitation pursuant to 20 C.F.R. §§ 404.1529 and 416.929.

Tr. 24.   The ALJ noted that the more severe limitations claimed by Plaintiff, including Plaintiff's assertion that his impairments would result in absenteeism and unscheduled breaks, lacked documentation and were not consistent with the medical and other evidence of record.   Tr. at 24-25.

The ALJ relied on the VE's testimony to find that Plaintiff could not perform any past relevant work.   The ALJ proceeded to address Plaintiff's vocational factors (age, education, and work experience).   The ALJ found that Plaintiff was 52 years old, which under the applicable regulations was considered an individual "closely approaching advanced age," on the alleged disability date, and that Plaintiff subsequently changed category to "advanced age."[5]   The ALJ further found that Plaintiff had a limited, eighth-grade education and was able to communicate in English.   With respect to Plaintiff's work experience, the ALJ relied on the VE's testimony to find that Plaintiff acquired transferable driving skills from his past relevant work.

Next, using the Medical-Vocational Guidelines ("Guidelines"), 20 C.F.R. Pt. 404, Subpart P, Appendix 2[6] as a "framework" for his decision-making, and considering the

---

[5]   Under the applicable regulations, there are three relevant age categories: younger person (under age 50), a person closely approaching advanced age (age 50–54), and a person of advanced age (age 55 or older). 20 C.F.R. §§ 404.1563, 416.963.   Plaintiff turned 55 before the ALJ issued his decision.

[6]   The Guidelines "are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with

Plaintiff's RFC and vocational factors, the ALJ found that Plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." Tr. 26.

Specifically, the ALJ relied on the VE's testimony that a hypothetical person with Plaintiff's vocational factors and RFC could perform the jobs of escort vehicle driver and chauffer, which "require skills acquired in the claimant's past relevant work but no additional skills." Tr. 26. The ALJ also relied on the VE's testimony that there were 19,431 escort vehicle driver jobs and 8,946 chauffer jobs in the national economy.

Accordingly, the ALJ found that "although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate under the framework of [Guidelines] Rule 202.12 prior to his 55th birthday and Rule 202.03 as of the claimant's 55th birthday." Tr. 26.

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration, which was denied on May 7, 2018. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

**Plaintiff's Arguments Before This Court**

---

differing degrees of exertional impairment." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citation omitted).

Plaintiff argues that the ALJ erred in relying on the VE's testimony to find that Plaintiff had the transferable skill of driving that could be used in other occupations. Plaintiff argues that this error was not harmless because, had the ALJ properly considered that Plaintiff did not have any transferable skills, the Guidelines may have directed a finding of disability in Plaintiff's case. Plaintiff further argues that the ALJ's RFC finding was erroneous because it was not supported by sufficient medical evidence. Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for further development of the record.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's

decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. §§ 404.1520 and 415.920, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of production shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform other work

that exists in significant numbers in the national economy and that is consistent with the claimant's vocational factors.  *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  "However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).

**RFC Finding**

As an initial matter, the Court rejects Plaintiff's argument with respect to the ALJ's RFC finding.  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Id.*  "However, there is no requirement that an RFC finding be supported by a specific medical opinion."  *Id.*

Here, the Court concludes that the ALJ's RFC determination is supported by sufficient medical evidence thoroughly discussed by the ALJ, including the consultative examination by Dr. Leung and the treatment records documenting conservative treatment, medical findings of mild or minimal impairments, and Plaintiff's failure to follow treatment recommendations.  *See, e.g., Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (conservative treatment history may contradict subjective complaints of disabling conditions); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (ALJ's RFC finding of light work was supported by some medical evidence, including diagnostic tests showing only mild degenerative changes); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.

2005) (failure to follow a recommended course of treatment weighs against a claimant's claim of disability).

Plaintiff has not identified additional limitations that he contends the ALJ should have included; nor has he pointed to medical evidence warranting additional limitations. Rather, Plaintiff points to the absence of evidence regarding his "function-by-function" limitations. ECF No. 11 at 9. But, as the Eighth Circuit has held, where the medical evidence "is 'silent' with regard to work-related restrictions such as the length of time [a claimant] can sit, stand and walk and the amount of weight [h]e can carry," the fault is not necessarily the ALJ's. *See Steed*, 524 F.3d at 876. Rather, it is the claimant's burden to prove disability, and "[a]t the very least, the claimant's failure to provide medical evidence with this information should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision." *Id.* (emphasis in original).

Plaintiff's reliance on *Nevland v. Apfel,* 204 F.3d 853 (8th Cir. 2000) is likewise misplaced. In *Nevland*, the claimant provided medical evidence documenting his limited functional capabilities, which the ALJ disregarded in favor of the opinions of "non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [the claimant's] RFC." *Nevland*, 204 F.3d at 858 (reversing the ALJ's decision on this ground). By contrast, here, the ALJ's RFC is supported by medical evidence, including a consultative examination, and there is no medical evidence in the record supporting any greater limitations. In sum, the ALJ's RFC finding is supported by substantial evidence.

13

## The ALJ's Step-Five Finding and Plaintiff's Transferable Skills

However, there is merit to Plaintiff's argument that the ALJ's step-five finding, particularly with respect to Plaintiff's transferable skills, was not supported by substantial evidence. In assessing a claimant's vocational factors at step five, the Commissioner recognizes that advancing age is an increasingly limiting factor in a person's ability to make adjustment to other types of work. 20 C.F.R. §§ 404.1563, 416.963. With respect to education, the Commissioner considers an eighth-grade education to be a limited education. 20 C.F.R. § 1564(b)(3). And in assessing work experience, the skill requirements of a claimant's past relevant work is considered. 20. C.F.R. §§ 404.1568, 416.968.

As to the transferability of skills for persons of advanced age, the regulations provide:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s).

20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

After considering the above vocational factors, there are two means by which the Commissioner can meet his burden at step five: reliance upon the Guidelines or obtaining VE testimony. If a claimant's impairments are exertional (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the

Guidelines. *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999). If the claimant has

non-exertional impairments that limit his ability to perform the full range in a particular

category of work (medium, light, and sedentary) listed in the regulations, VE testimony is

usually required. *See, e.g.*, *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010).

Specifically, as the ALJ noted:

> When the claimant cannot perform substantially all of the exertional
> demands of work at a given level of exertion and/or has nonexertional
> limitations, the medical-vocational rules are used as a framework for
> decisionmaking *unless* there is a rule that directs a conclusion of 'disabled'
> without considering the additional exertional and/or nonexertional
> limitations.

Tr. 26 (emphasis added) (citing SSRs 83-12 and 83-14). In other words, in such a case,

"the Guidelines are first considered to determine whether [a claimant] is entitled to a

finding of disability based on exertional impairments alone." *Higgins v. Apfel*, 222 F.3d

504, 506 (8th Cir. 2000) (citation omitted).

a. <u>Application of the Guidelines</u>

As the Commissioner appears to concede (ECF No. 18 at 9), Rules 202.02 and

202.03 of the Guidelines provide that a person like Plaintiff, who is of advanced age[7]

---

[7] Plaintiff only reached advanced age (55) on July 17, 2016, approximately one year
before the ALJ issued his decision. At the time of the alleged onset date, Plaintiff was
still considered "closely approaching advanced age," as the ALJ correctly noted. The
Guidelines did not direct a finding of disability with respect to that time period. Under
Rules 202.10 through 202.12, a claimant closely approaching advanced age, who has
limited education, and previous relevant work experience in skilled or semiskilled work,
whose impairments limit him to no more than light work, is not disabled, regardless of
whether he has transferable skills. Thus, transferability of Plaintiff's job skills was
irrelevant to the disability determination with respect to at least some of the time period

with limited education and previous relevant work experience in skilled or semiskilled work, whose impairments limit him to no more than light work, is considered disabled unless he has skills that can be transferred to other skilled or semiskilled work.[8]   The ALJ relied on the VE's testimony to find that Plaintiff had driving skills from his past semiskilled work which would transfer to the jobs of escort vehicle driver and chauffer. It is at this point that error arises.

The Eighth Circuit has held that an ALJ need not explicitly identify a claimant's transferable skills.   *See Tucker v. Barnhart,* 130 F. App'x 67, 68 (8th Cir. 2005) (per curiam) (holding that where the ALJ properly relied upon a VE's testimony to find that the claimant had transferable skills, the ALJ was not required to identify these skills in finding that the claimant was not disabled) (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548–50 (6th Cir. 2004) (holding that SSR 82–41 requires specific findings only

---

before Plaintiff turned 55.   However, the regulations provide that the Guidelines are not applied mechanically in a "borderline" situation, such as when a claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled."   20 C.F.R. § 404.1563(b).   In that case, the agency "will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case."   *Id.*; *see also Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

[8]     Footnote 1 to Rule 202.03 incorporates Rule 202.00(f), which provides that "[f]or a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."   20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 202.00(f).   However, the ALJ did not, and was not required to, refer to Rule 202.00(f), as Plaintiff was only 55 at the time of the ALJ's decision.

when the ALJ relies exclusively on the Guidelines to reach a determination)).[9]  But

where, as here, the Guidelines, used as a framework, suggest a finding of disability unless

the claimant had transferable skills, and the ALJ's finding as to transferability is not

supported by substantial evidence, reversal is required.  *See Ellison v. Sullivan*, 921 F.2d

816, 820 (8th Cir. 1990).

b.  Driving as a Transferable Skill

The parties strongly dispute whether driving is a transferable skill.  The

applicable regulation explains:

> What we mean by transferable skills. We consider you to have skills that can
> be used in other jobs, when the skilled or semi-skilled work activities you did
> in past work can be used to meet the requirements of skilled or semi-skilled
> work activities of other jobs or kinds of work. This depends largely on the
> similarity of occupationally significant work activities among different jobs.

20 C.F.R. §§ 404.1568(d)(1); 416.968(d)(1).  The regulation goes on to state that

"[t]ransferability is most probable and meaningful among jobs in which—(i) the same or

a lesser degree of skill is required; (ii) the same or similar tools and machines are used;

and (iii) the same or similar raw materials, products, processes, or services are involved,"

although "a complete similarity of all three factors is not necessary . . . ."  20 C.F.R. §§

404.1568(d)(2)-(3), 416.968(d)(2)-(3).

---

[9]     *But see Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224–1225 (9th Cir.
2009) (rejecting the approach taken in *Wilson* and holding that specific findings under
SSR 82–41 are required even when the ALJ relies on a VE's testimony); *Draegert v.
Barnhart,* 311 F.3d 468 (2d Cir. 2002) (same).

Plaintiff points to the Social Security Administration's Program Operations Manual System ("POMS"),[10] which cites "[s]pecialized truck driving" as an example of "skills that do not generally transfer to other work" and which further explains that "basic driving ability is not a skill[.]"  POMS, POMS DI 25015.017(J)(2), Transferability of Skills Assessment (effective June 21, 2017), *available at* https://secure.ssa.gov/poms.nsf/lnx/0425015017 (last visited August 19, 2019).

The Commissioner relies on *Fines v. Apfel*, 149 F.3d 893 (8th Cir. 1998), a decision pre-dating POMS DI 25015.017, in which the Eighth Circuit upheld an ALJ's reliance on a VE's testimony that a claimant had acquired skills in past relevant work classified under the DOT as "Truck Driver, Heavy," with an SVP of 4, that could be transferred to other jobs in the national economy with an SVP of either 3 or 4.  149 F.3d at 895.  The Eighth Circuit held that the VE's testimony constituted "substantial evidence to support the ALJ's finding that [the claimant] acquired skills in his former semiskilled job as a truck driver that he [could] transfer to other semiskilled jobs in the national economy."  *Id.*

Upon careful consideration of the parties' arguments and applicable law, the Court concludes that driving *could* be a transferable skill in this context.  Although an ALJ should consider them in their findings, the POMS guidelines have no legal force and are

---

[10]     The POMS are the Commissioner's set of internal rules used to aid in disability determinations.  *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004).

not binding on the Commissioner. *Hartfield*, 384 F.3d at 988 (citing *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003)). In any event, POMS DI 25015.017(J)(2), upon which Plaintiff relies, merely indicates that basic driving abilities associated with specialized truck driving jobs do not *generally* transfer to other work. It does not preclude an ALJ from finding that such skills are transferable, particularly where the ALJ has relied on the testimony of a VE and has explained the basis for such a finding. *See, e.g.*, *Fines*, 149 F.3d at 895 (finding that reliance on the testimony of a VE to determine the existence of transferable skills is explicitly allowed by the Commissioner's regulations); *see also Cowan v. Dep't of Health & Human Servs.*, 986 F.2d 1426 (Table), 1993 WL 34740, at *3 (10th Cir. 1993) (unpublished) (affirming an ALJ's reliance on a VE's testimony that a claimant's past work as a truck driver entailed the skills of "driving and safely operating a commercial vehicle, and knowing and applying the regulations of highway driving," which could transfer to other jobs involving handling large vehicles on public roadways); *Smith v. Sullivan*, 907 F.2d 151 (Table), 1990 WL 92665, at *3 (6th Cir. 1990) (unpublished) (affirming an ALJ's reliance upon a VE's testimony that the claimant's past work as a truck driver entailed the skills of operating a motor vehicle; observing traffic regulations; coordinating eyes, hands, and feet to operate the vehicle; being physically able to drive for long period; and math skills necessary to collect delivery receipts, which would transfer to other jobs similar in degree of skills required, type of vehicle used, and types of processes and services involved).

     c.  <u>The ALJ's Findings Regarding Transferability of Plaintiff's Driving Skills</u>

As the Commissioner concedes, even if Plaintiff's driving skills are transferable, they would not transfer to an unskilled job, such as the escort vehicle driver job cited by the ALJ at step five. *See, e.g.* 20 C.F.R. § 404.1568(d)(4) ("If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to *other skilled or semiskilled work* . . . ."); SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000) ("Evidence from a VE . . . cannot be inconsistent with SSA policy on transferability of skills," including that "an individual cannot transfer skills to unskilled work . . . ."); ECF No. 18 at 7. Therefore, the Commissioner concedes that "Plaintiff's semiskilled driving skill is not transferable to the unskilled position of escort vehicle driver." ECF No. 18 at 7. The ALJ's holding to the contrary is undisputedly erroneous.

This error is not harmless. The ALJ based his conclusion at step five, that Plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," on his finding that Plaintiff's driving skills would transfer to *both* the jobs of escort vehicle driver and chauffer. The Court cannot determine, on this record, whether the ALJ's analysis would have changed if he recognized that the escort vehicle driver job was an unskilled job to which Plaintiff's driving or other skills would not transfer.

For example, there is no clear testimony from the VE that the job of chauffer was merely representative of a wider of range of skilled or semiskilled jobs to which

Plaintiff's skills would transfer. And, as the ALJ acknowledged, there are only 8,946 chauffer jobs available nationally. If this was the only job to which Plaintiff's skills would transfer, the ALJ might not have found that Plaintiff could perform other work existing in significant numbers in the national economy.[11] *Compare Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (affirming finding that 10,000 jobs in the national economy and 200 in state constitute a significant number, particularly where the VE testified that the figures were merely representative of a larger category of jobs the claimant could perform)*, with Terri G. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *11 (N.D.N.Y. Mar. 22, 2019) (reversing and remanding for a new step-five determination where, "although the VE identified four job titles, this number [was] still below 10,000 jobs in the national economy").

As such, the Court concludes that the ALJ's decision is not supported by substantial evidence in the record as a whole. "Usually when a claimant was improperly denied benefits, the case is remanded to the ALJ for further administrative proceedings. Where the record shows overwhelming support for a finding of disability, however, the

---

[11]    In response to Plaintiff's attorney's questions, the VE suggested that there may be other semiskilled jobs to which Plaintiff "would have skills to transfer to," such as the job of a mobile lounge driver. However, the VE did not identify such jobs in response to the ALJ's hypothetical question and never clearly opined that a person with Plaintiff's RFC and vocational factors could perform such jobs. Likewise, although the VE suggested that Plaintiff may have acquired customer service or clerical skills in his past work, the VE did not testify that such skills would be transferable to other skilled or semiskilled jobs that a person with Plaintiff's RFC and vocational factors could perform.

court may eschew remand and direct that benefits be granted." *Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *13 (E.D. Mo. Sept. 22, 2015) (citations omitted). Because the record here does not overwhelmingly support a finding of disability, the Court will remand the case for further proceedings.

On remand, the ALJ should appropriately review and re-evaluate the current evidentiary record; reconsider the application of the Guidelines, including re-evaluating the transferability of skills from Plaintiff's past relevant work in accordance with 20 C.F.R. §§ 404.1568(d), 416.968(d); and, if necessary, obtain supplemental VE testimony or develop the record in other ways to evaluate whether, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform during the alleged disability period.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner in denying benefits is **REVERSED** and the action is **REMANDED** for further proceedings consistent with the above.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 30th day of August, 2019.